OPINION
{¶ 1} Appellant, the state of Ohio, appeals from the March 1, 2005 judgment entry of the Chardon Municipal Court, granting the motion to suppress evidence of appellee, Dennis W. Mausling.
 {¶ 2} On December 4, 2004, appellant filed a complaint against appellee on one count of driving while under the influence of alcohol or drugs ("DUI"), a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1), and one count of operating a vehicle without reasonable control, a minor misdemeanor, in violation of R.C. 4511.202(A). Appellee entered a not guilty plea at his initial appearance on December 6, 2004.
 {¶ 3} On January 25, 2005, appellee filed a motion to suppress evidence.[1] A suppression hearing was held on February 28, 2005.
 {¶ 4} At that hearing, Sergeant Steve Gallowan, Jr. ("Sergeant Gallowan"), with the Geauga County Sheriff's Office ("GCSO"), testified for appellant that he and Deputy Matthew Bosworth ("Deputy Bosworth") were on duty on December 4, 2004. Shortly before 11:00 p.m., an unidentified person called the GCSO and reported a traffic accident located at 17779 GAR Highway, Montville Township, Geauga County, Ohio. Sergeant Gallowan and Deputy Bosworth received calls from dispatch and arrived on the scene about fifteen to twenty minutes later. Sergeant Gallowan observed an unoccupied vehicle partially on the roadway and partly in a ditch. Deputy Bosworth ran the license plate on the automobile, which was registered to appellee. Appellee resided at the address where the vehicle was found. Both Sergeant Gallowan's and Deputy Bosworth's cruisers were parked with their overhead lights activated in front of appellee's home, approximately three car lengths from the roadway.
 {¶ 5} Sergeant Gallowan indicated that Deputy Bosworth attempted to contact appellee but could not locate a phone number. Sergeant Gallowan and Deputy Bosworth then proceeded toward appellee's house, where they observed through the front window appellee seated on a couch. Deputy Bosworth banged on the window and shined a flashlight on appellee's face. Sergeant Gallowan testified that appellee was unresponsive and had a lit cigarette on his lap. At that time, Sergeant Gallowan and Deputy Bosworth entered appellee's residence through the unlocked front door, identified themselves as sheriff's deputies, and yelled to him to see if he was okay. After receiving no response, they went into the living room, saw the lit cigarette on appellee's lap, observed burn holes in his shirt, and continued to yell at him. Appellee finally woke up after they shook his shoulder and yelled at him again. At that point, they suspected that appellee may have operated his vehicle under the influence.
 {¶ 6} According to Sergeant Gallowan, with respect to the decision to approach appellee's residence, the main objective was to check on his welfare to see if he required any medical assistance. He presumed that the driver of the vehicle was the owner of the premises and the person seated on the couch.
 {¶ 7} On cross-examination, Sergeant Gallowan testified that after appellee awoke, he put his cigarette out, was no longer in danger of hurting himself, and did not appear injured. Sergeant Gallowan stated that appellee was in an obvious state of intoxication, could have lit up another cigarette, and there appeared to be no one else present in the house. With respect to the breathalyzer test later given that night, which revealed a .193 BAC, he said that there was no specific time of knowing when the accident actually took place.
 {¶ 8} Pursuant to its March 1, 2005 judgment entry, the trial court granted appellee's motion to suppress. The trial court determined that all evidence obtained as a result of the warrantless intrusion of appellee's residence was inadmissible since no exigent circumstances existed. It is from that judgment that appellant filed a timely notice of appeal pursuant to Crim.R. 12(K) and makes the following assignment of error:
 {¶ 9} "The trial court erred by granting [appellee's] motion to suppress evidence."
 {¶ 10} In its sole assignment of error, appellant argues that the trial court erred by granting appellee's motion to suppress. Appellant contends that the deputies had probable cause to enter appellee's residence due to the fact that a crash occurred in front of his home. Appellant stresses that the vehicle involved in the crash was registered to appellee, he matched the description of the owner of the vehicle, and was unresponsive to physical danger.
 {¶ 11} This court stated in State v. Jones, 11th Dist. No. 2001-A-0041, 2002-Ohio-6569, at ¶ 16:
 {¶ 12} "[a]t a hearing on a motion to suppress, the trial court assumes the role of the trier of facts and, therefore, is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366 * * *. When reviewing a motion to suppress, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Guysinger (1993), 86 Ohio App.3d 592, 594 * * *. Accepting these findings of facts as true, a reviewing court must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the appropriate legal standard. State v. Curry (1994), 95 Ohio App.3d 93, 96
* * *." (Parallel citations omitted.)
 {¶ 13} In State v. Stanberry, 11th Dist. No. 2002-L-028,2003-Ohio-5700, at ¶ 141-8, we stated:
 {¶ 14} "A search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few well-delineated exceptions. Katz v. United States (1967),389 U.S. 347, 357 * * *. The doctrine of exigency is an exception to the general, constitutional prohibition against warrantless searches. `Exigency' denotes the existence of `real immediate and serious consequences' that would certainly occur were a police officer to postpone action to get a warrant. Welsh v. Wisconsin
(1984), 466 U.S. 740, 751 * * *. As such, a court will not `excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative.'McDonald v. United States (1948), 335 U.S. 451, 456 * * *.
 {¶ 15} "The United States Supreme Court has held that the doctrine of exigency applies in two separate sets of circumstances: first, police may commence a warrantless search and seizure to avoid `the imminent destruction of vital evidence.' Wong Sun v. United States (1963), 371 U.S. 471, 484
* * *. Second, a warrant is unnecessary where the police are faced with a `need to protect or preserve life or avoid serious injury.' Mincey v. Arizona (1978), 437 U.S. 385, 392 * * *. The circumstances of the instant case fall within the purview of the latter category.
 {¶ 16} "In Mincey, supra, the court stated:
 {¶ 17} "`we do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe a person within is in need of immediate aid.' Id. at 392.
 {¶ 18} "However, emergencies are inherently temporary and therefore the scope of a search justified by exigency is concomitantly limited. As such, when the officers in question have reasonable grounds upon which to believe that an emergency exists, they have a duty to enter the premises and investigate, provided that the warrantless search is `strictly circumscribed by the exigencies which justify its initiation.' State v.Applegate (1994), 68 Ohio St.3d 348, 350 * * *, quoting Terryv. Ohio (1968), 392 U.S. 1, 26 * * *." (Parallel citations omitted.)
 {¶ 19} In the case sub judice, the trial court stated in its March 1, 2005 judgment entry:
 {¶ 20} "The issue in this case is whether exigent circumstances (e.g. an emergency) existed to justify a warrantless entry of [appellee's] residence. This Court concludes such circumstances did not exist.
 {¶ 21} "* * * [State v. Nipple (1996), 11th Dist. No. 95-A-0080, 1996 Ohio App. LEXIS 5231] * * * is similar to the case at bar but for the fact that there was no immediate danger (i.e., a lighted cigarette) to the defendant in Nipple.
 {¶ 22} "Should a lighted cigarette on [appellee's] lap be the basis for a warrantless search? As one would suspect there are a plethora of cases on the issue of what constitutes exigent circumstances * * *. To conclude that a lighted cigarette on [appellee's] lap constituted an emergency would, in the opinion of the undersigned, `swallow' the Fourth Amendment principle that a warrantless intrusion of one's residence is [p]er [s]e unreasonable.
 {¶ 23} "The Court has the benefit of hindsight. In the instant case, perhaps one officer should have remained outside the residence viewing [appellee] while the other officerattempted to obtain a search warrant." (Emphasis sic.)
 {¶ 24} We disagree with the trial court that exigent circumstances did not exist to justify a warrantless entry of appellee's residence. Both the trial court's and appellee's reliance on Nipple, supra, is misplaced.
 {¶ 25} In Nipple, a patrolman received a radio transmission from an EMT to "`come right over'" to his home, which he did. Id. at 1. The patrolman learned that the appellant was involved in an automobile accident and that he might have been injured. Id. at 1-2. As the patrolman was leaving the EMT's home to check on the appellant, he received a call from the sheriff's department dispatching him to investigate the automobile accident. Id. at 2. Upon arriving on the scene, the patrolman observed a pick-up truck with mailboxes on it and a two-by-six piece of wood through the passenger side of the front windshield. Id. The patrolman walked up to a trailer, knocked on the door and yelled for the appellant but there was no response. Id. He entered the trailer to look for the appellant, saw him sleeping in one of the bedrooms, determined that he did not appear to be injured, but was unable to wake him. Id. at 2-3.
 {¶ 26} Subsequently, a deputy arrived on the scene who had recently learned that the appellant was not injured. Id. at 3. Nevertheless, he entered the trailer and ultimately arrested the appellant for driving under the influence of alcohol. Id. The appellant was charged with violating both R.C. 4511.19(A)(1) and (3), and entered a plea of not guilty. Id. He later filed a motion to suppress evidence alleging that the warrantless intrusion into his home was not supported by exigent circumstances. Id. Following a hearing, the trial court overruled the appellant's motion. Id. The appellant filed a notice of appeal which was dismissed for lack of a final appealable order. Id. at 3-4. He later changed his plea to no contest with respect to the R.C. 4511.19(A)(3) charge, and was found guilty. Id. at 4. The trial court dismissed the charge under R.C. 4511.19(A)(1). Id. The appellant timely filed a notice of appeal contending that the trial court erred in overruling his motion to suppress. Id.
 {¶ 27} In Nipple, this court determined that exigent circumstances did not exist. Id. at 7. We reasoned that the deputy did not enter the trailer under exigent circumstances but rather to investigate a non-felony where the appellant was asleep and not a danger to anyone. Id. at 8. This court stressed that the deputy testified that his primary purpose for entering the appellant's residence was to investigate the crash, not to check on his condition. Id. at 7-8. Thus, we held that the trial court erred in overruling the appellant's motion to suppress. Id. at 8.
 {¶ 28} Unlike the deputy in Nipple, in the instant case, Sergeant Gallowan and Deputy Bosworth did not enter appellee's residence to investigate a traffic crash and make a drunk driving arrest. Rather, they entered appellee's house because they were concerned for his safety and welfare due to the fact that they believed that appellee had been the driver of the vehicle involved in the crash and that he was unresponsive with a lit cigarette on his lap.
 {¶ 29} "Generally, without a warrant or a recognized exception to the warrant requirement, police officers may not conduct a search of an individual's home. However, police officers may, without reasonable suspicion of criminal activity, intrude on a person's privacy to carry out `community caretaking functions' to enhance public safety." Stanberry, supra, at ¶ 23, citing State v. Norman (1999), 136 Ohio App.3d 46, 54.
 {¶ 30} In the case at bar, exigent circumstances existed which justified Sergeant Gallowan's and Deputy Bosworth's entrance into appellee's home. With regard to the decision to approach appellee's residence, Sergeant Gallowan testified that the main objective was to check on appellee's welfare to see if he required any medical assistance. Again, Sergeant Gallowan and Deputy Bosworth were dispatched to appellee's address with regard to a traffic accident; observed appellee's unoccupied vehicle outside of his home partially in a ditch; attempted to contact him but could not locate his phone number; saw appellee through the front window seated on a couch; banged on the window and shined a flashlight on his face; and indicated that appellee was unresponsive and had a lit cigarette on his lap. At that time, the objective of Sergeant Gallowan and Deputy Bosworth was to prevent appellee from injuring himself and/or his property.
 {¶ 31} According to the evidence presented, Sergeant Gallowan and Deputy Bosworth reasonably believed that appellee was in need of immediate aid in order to protect or preserve his life or avoid serious injury. Pursuant to Mincey, supra, the Fourth Amendment did not bar them from making the warrantless entry into appellee's home.
 {¶ 32} However, although we do not agree with the trial court that exigent circumstances did not exist, we stress that appellant failed to carry its burden of proof on the Miranda
issue as well as on the two-hour requirement pursuant to R.C.4511.19(D)(1), which were clearly set forth in appellee's motion to suppress.[2] There does not appear to be any legal prejudice with respect to the Miranda issue since we are unable to discern from the record whether appellee in fact made any incriminating statements prior to his arrest. Additionally, there is nothing in the record to support that this was a non-custodial exercise.
 {¶ 33} Again, appellant failed to carry its burden of proof on the two-hour time limit.[3] R.C. 4511.19(D)(1) provides in part: "[i]n any criminal prosecution * * * for a violation of division (A) or (B) of this section or for an equivalent offense, the court may admit evidence on the concentration of alcohol, drugs of abuse, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within two hours of the time of the alleged violation."
 {¶ 34} Here, appellant failed to even attempt to show that it complied with the two-hour time requirement. At the suppression hearing, Sergeant Gallowan even testified on cross-examination that there was no specific time of knowing when the accident took place with respect to the breathalyzer test later given that night. Further, appellant did not establish that appellee was the operator of the vehicle at the time of the incident at issue. Therefore, we must presume regularity in the proceedings and affirm. See State v. Bretz (June 22, 2001), 11th Dist. No. 2000-P-0069, 2001 Ohio App. LEXIS 2803, at 3. The trial court properly suppressed the evidence submitted.
 {¶ 35} For the foregoing reasons, appellant's sole assignment of error is not well-taken. The judgment of the Chardon Municipal Court is affirmed.
Grendell, J., concurs, Rice, J., concurs in judgment only.
[1] In his motion to suppress, appellee alleged that the trial court should suppress the blood alcohol concentration test because it was given more than two hours after the alleged offense in violation of R.C. 4511.19(D)(1). In addition, appellee moved the court to suppress any and all evidence including, but not limited to, any tests of coordination and/or alcohol level including any statements elicited, and any observations and/or opinions of the deputy obtained as a result of his detention for the following reasons: (1) failure to give Miranda rights; (2) entering the home without a warrant; (3) no consent to enter the home; and (4) not in hot pursuit. Appellee stressed that there was no probable cause or specific and articulable facts upon which to detain/arrest him, thus, any evidence obtained violated his due process rights and should be suppressed.
[2] It is clear that the issue of "hot pursuit" is not applicable to the facts of this case.
[3] We note that "[t]he two-hour limitation in R.C. 4511.19 is a general limitation applying to all arrests for a violation of that statute regardless of how long before the arrest the consumption of alcohol took place and is based on scientific principles consistently applicable to the general population. On the other hand, the results of the analysis of a blood sample withdrawn more than two hours after the event to which the test must relate may have probative value dependent upon the foundation of expert or opinion evidence related to the defendant and the circumstances. (Evid.R. 701 and 702, applied.)" State v.Gates (1983), 10 Ohio App. 3d 265, paragraph three of the syllabus. Also, "[t]he state has the burden to establish that the test was done in accordance with established law to the extent the defendant takes issue with its legality." State v. Golec
(Mar. 17, 1989), 11th Dist. No. 1977, 1989 Ohio App. LEXIS 873, at 4-5, citing State v. Gasser (1980), 5 Ohio App.3d 217. "Thus, the state must show that the test was given within two hours from the time of the offense." Golec at 5. "[T]he results of a chemical test not performed in conformity with R.C. 4511.19
may nevertheless be admitted into evidence for purposes of determining that the [defendant] was under the influence of alcohol in a prosecution for R.C. 4511.19(A)(1) * * *." Id.