[Cite as *State v. Ruppert*, 2013-Ohio-4878.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

STATE OF OHIO,                    :
                                  :
        Plaintiff-Appellee,       :        Case No.  13CA10
                                  :
    vs.                           :
                                  :        DECISION AND JUDGMENT
CHARLES D. RUPPERT,               :        ENTRY
                                  :
        Defendant-Appellant.      :        **Released: 10/30/13**
_____

APPEARANCES:

David A. Sams, West Jefferson, Ohio, for Appellant.

Paul G. Bertram, III, Marietta City Law Director, and Catherine Ingram
Reynolds, Marietta City Assistant Law Director, Marietta, Ohio, for
Appellee.

_____

McFarland, P.J.

{¶ 1}  Charles Douglas Ruppert appeals from his conviction in the

Marietta Municipal Court, for the offense of operating a motor vehicle with

a prohibited blood-alcohol concentration in violation of R.C.

4511.19(A)(1)(h).   Appellant contends: (1) the trial court erred by finding

that Appellant operated his vehicle within three hours of the time of his

breathalyzer test; and, (2) the verdict of guilty was based on insufficient

evidence and was otherwise against the manifest weight of the evidence.

After reviewing the record, we find there was competent credible circumstantial evidence to support the trial court's finding Appellant's breath test was conducted within the three-hour time limit as required by R.C. 4511.19(D)(1)(b).  As such, we find the motion to suppress was properly overruled.  Accordingly, we overrule Appellant's first assignment of error.  Further, we find Appellant's conviction was based on sufficient evidence and was not otherwise against the manifest weight of the evidence.  Therefore, we also overrule Appellant's second assignment of error.

FACTS

{¶ 2}  Deputy Jeremiah K. McConnell of the Washington County Sheriff's Department charged Appellant with operating a motor vehicle with a prohibited concentration of alcohol, a violation of R.C. 4511.19(A)(1)(h).  The charge arose from circumstances involving Appellant which occurred on October 25, 2012. Appellant subsequently appeared in Marietta Municipal Court and pled not guilty.  Eventually, Appellant filed a motion to suppress the results of his breath test for the reason that the BAC Datamaster test was not performed within the required three-hour period. The trial court held a hearing on Appellant's motion.

{¶ 3}  Theresa Ann Everson of Belpre, Ohio, was the State's first witness at the suppression hearing.  Ms. Everson testified she was at home

on October 25, 2012, sleeping, and she was awakened by her two puppies barking and then a call for help. Ms. Everson got up to let the animals out, and five minutes later, they came running back. Then she heard the call for help again. Everson went to her bedroom and looked out her window, to see a person standing about 50 feet from her window. Once Everson realized the person was asking for help, she dialed the sheriff's office with her cell phone. She then called 911 and contacted a dispatcher, advising that she was home alone and a man was outside her window. Everson identified Appellant in the courtroom.

{¶ 4} Everson estimated if the sheriff's department recorded her phone call at 5:56 a.m., then she probably was awakened by the noise around 20 minutes earlier, or approximately 5:30 a.m. She testified the time from when she first heard the puppies barking to the point in time when she made contact with dispatch was no more than 30 minutes. On cross-examination, Everson admitted she never looked at a clock, she was "kind of guessing." Everson described Appellant as appearing drunk by his walking or staggering. Everson later testified in redirect that her puppies did not react when cars came into her driveway, but they did react when someone came onto the porch.

{¶ 5}  Deputy McConnell testified that he was dispatched to Theresa Everson's home in Dunham Township at 5:56 a.m. due to a report of a suspicious male at the house. It was a cold, frosty morning. He arrived a few minutes after 6:00 a.m. McConnell testified the Everson home sits atop a small hill.  When he pulled to the front of the house, he observed a male walking towards him with his hands in the air.  McConnell exited his vehicle.  Appellant advised McConnell he was lost.  McConnell described Appellant as disoriented, confused, staggering, with a strong smell of alcohol.

{¶ 6}  Appellant advised Deputy McConnell he was not sure what had happened.  He had been in his car, a red Monte Carlo, and the next thing he knew, he was in the woods or a field. McConnell commenced searching for Appellant's vehicle.  He found tire tracks around Everson's house and eventually found Appellant's car parked down the hill, in a wooded area, covered in dust. McConnell estimated the car to be 50 or 60 yards from the house, "down over the hill, a pretty good ways." It took him approximately five minutes to locate Appellant's car.

{¶ 7}  McConnell conducted field sobriety tests and determined Appellant was under the influence of drugs or alcohol.  Appellant was

arrested and taken to the Washington County Jail. While there, Appellant took a breath test, administered by Deputy Kevin Carr. The result was .174.

{¶ 8} On cross-examination, McConnell testified the BMV 2255 form he completed lists the "violation" time as 5:56 a.m. McConnell explained that was the time he received the call, not the time the accident occurred. McConnell testified the time of test was listed as 8:10 a.m. McConnell acknowledged that the time listed on the BAC ticket, 8:15 a.m., would be the more accurate test time. McConnell admitted he had no idea the time the accident actually occurred, except that it would have been prior to 5:56 a.m. On redirect, Deputy McConnell testified the hood of the car was still warm.

{¶ 9} Deputy Carr testified he administered the breath test at the Washington County Jail. He is certified to operate the Datamaster BAC machine. Carr identified State's Exhibit B, a "subject test form" for use with the breath machine. Carr testified he completed the checklist on the form. He identified a photocopy of the evidence ticket printed by the breath test machine. The ticket demonstrated the machine was working properly at 8:14 a.m. Appellant's test result was completed at 8:15 a.m. The machine was again verified as working accurately at 8:16 a.m.

{¶ 10}  In closing, Appellant's counsel argued due to the various facts of the case, set forth above, there was simply no way to determine when Appellant's accident actually occurred and therefore, the test should be suppressed.  The trial court found that the test was performed at 8:15 a.m. and for the test not to be suppressed, the last operation of the vehicle had to have occurred at 5:15 or later.  The trial court observed:

> "There is nothing that clear in this case.  We have the lay witness's testimony that she placed the call at 5:56.  She was awaked by her dogs, the puppies barking, were outside for about five minutes, and she believes the time that elapses was at the most [Inaudible].  So that would be that the last operation was somewhere between no earlier than 5:15 and no later than maybe about 5:30.  The deputy added that the engine was or the hood was warm.  It was a cold morning and that there was frost.  The reasonable inference from that is that the recent operation would have been prior to six o'clock, when he felt the hood, because he arrived at six o'clock.  The Court is going to find that operation was within three hours."

{¶ 11}  On March 15, 2013, Appellant pled no contest to a violation of R.C. 4511.19(A)(1)(h).  He was sentenced to $575.00 fine and costs, 33 days in jail, and a one-year license suspension.  Appellant now brings this appeal, setting forth two assignments of error for our review. Appellant's jail sentence has been stayed pending this appeal.

ASSIGNMENT OF ERROR ONE

I.    THE TRIAL COURT ERRED IN FINDING THAT THE
      DEFENDANT-APPELLANT HAD OPERATED HIS VEHICLE

WITHIN 3 HOURS OF THE TIME OF THE BREATHALYZER
TEST.

STANDARD OF REVIEW

{¶ 12}  Our review of a decision on a motion to suppress "presents

mixed questions of law and fact."  *State v. McNamara,* 124 Ohio App.3d

706 710, 707 N.E.2d 539 (1997), citing *United States v. Martinez* (C.A.11,

1992), 949 F.2d 1117, 1119.  At a suppression hearing, the trial court is in

the best position to evaluate witness credibility. *State v. Dunlap*, 73 Ohio

St.3d 308, 314, 652 N.E.2d 988 (1995).  Accordingly, we must uphold the

trial court's findings of fact if competent, credible evidence in the record

supports them.  *Id.*  We then conduct a de novo review of the trial court's

application of the law to the facts.  *State v. Anderson*, 100 Ohio App.3d 688,

691, 654 N.E.2d 1034 (1995); *State v. Fields*, 4th Dist. No. 99CA11, 1999

WL 1125120 (Nov. 29, 1999).

LEGAL ANALYSIS

{¶ 13}  R.C. 4511.19(A)(1)(A) provides:

"No person shall operate any vehicle * * * within this

state, if at the time of the operation, any of the following apply:

(a)  The person is under the influence of alcohol, a drug

of abuse, or a combination of them.

* * *

(h) The person has a concentration of seventeen-hundredths of one gram or more by weight of alcohol per two hundred ten liters of the person's breath."

{¶ 14}  Additionally, R.C. 4511.19(D)(1)(b)[1] provides:

"In a criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section, or for an equivalent offense that is vehicle-related, the court may admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the alleged violation."

{¶ 15}  Appellant pled no contest to a violation of R.C. 4511.19(A)(1)(h).  In his first assignment of error, Appellant contends under the unique facts of his case, the trial court erred by finding compliance with R.C. 4511. 19(D)(1)(b). Appellant points out Theresa Everson did not observe Appellant wreck his vehicle and did not look at the clock or

---

[1] R.C. 4511.19(D) has been amended.  Previously, it allowed bodily substances to be collected up to only two hours after an alleged OVI violation. Most of the cases to be discussed infra involved considerations of this issue when the two-hour rule was in effect.

otherwise mark the time. Appellant highlights the fact there was no testimony presented to indicate how long a hood would stay warm after operation of the engine ceased.

{¶ 16} Appellant directs our attention to *State v. Cessna,* 11th Dist. Trumbull App. No. 2853, 1980 WL 352340 (Dec. 30, 1980), and *State v. Hennen,* 7th Dist., Belmont App. No. 86-B-2, 1986 WL 13579, (Dec. 2, 1986), cases wherein the appellate courts held that the two-hour time period for obtaining Breathalyzer tests was not affirmatively established by the evidence. In *Cessna,* the appellate court's brief opinion emphasized that the only evidence remotely relating to the time of the violation was the arresting officer's testimony as to when he received a call to go to the scene of an accident, but nothing in the State's case indicated when the accident occurred.

{¶ 17} In *Hennen,* the defendant was convicted of operating a motor vehicle in violation of R.C. 4511.19(A)(3). He was given a Breathalyzer test and tested .162. The evidence demonstrated Hennen was in a one-car crash during the early morning hours of June 30, 1985. The state patrol was notified at 4:32 a.m., and a trooper was dispatched to the scene. The trooper testified the Breathalyzer test was conducted at 5:31 a.m. As to the timing of the accident, the trooper testified he "felt he was within the two hour limit."

The trooper also relied on the fact that at the scene, the tire marks appeared fresh. However, the trooper was asked to explain the difference between a 15-minute tire mark and a 30-minute tire mark, and admitted he did not know. On cross-examination, the trooper acknowledged that Hennen's last operation of his vehicle could have been "within the last four or five hours." In its decision, the appellate court concluded:

> "The only conclusion that can be drawn from [Trooper Walker's] testimony in this case is that maybe the appellant was operating his motor vehicle within the two hour limit and maybe he wasn't operating the motor vehicle within the two hour limit. This certainly does not amount to an affirmative establishment of the time factor."

{¶ 18} Appellee State of Ohio counters that the trial court reasonably inferred from the evidence presented that the breath test occurred within three hours of Appellant's operation. Appellee directs our attention to *State v. Fowler*, 2nd Dist. Clark No. 99-CA-57, 2000 WL 353150, (Apr. 7, 2000), and *State v. Shaffer,* 4th Dist. Pickaway No. 01CA21, 2002-Ohio-4167, (Aug. 12, 2002).

{¶ 19} In *Fowler,* an officer was dispatched to the scene of an accident at 4:36 p.m. A breathalyzer was ultimately administered to the defendant at 5:48 p.m. In affirming the judgment of conviction, the second district court of appeals noted:

"(1) The officer stated that he believed the accident occurred at 4:35 p.m.; (2) the officer observed that the defendant's vehicle was still warm when he arrived; (3) the officer stated that the defendant' vehicle had apparently just been driven because it was sitting in the middle of the intersection; (4) the officer interviewed witnesses to determine the time of the accident; (5) the other drivers involved in the accident stated that the accident had occurred within a minute or two; and (6) the witnesses stated that the accident occurred around 4:35 p.m. Additionally, the court noted that the accident occurred on a busy road and that any accident would have been reported within a short period of time."

{¶ 20} In *Shaffer,* we concluded the trial court did not abuse its discretion by deciding to admit alcohol test results into evidence, noting that the evidence the trial court had before it was sufficient, but not overwhelming. There, the defendant's own statement indicated she notified the authorities very shortly after the accident occurred.

{¶ 21} Additionally we have reviewed the decisions in *State v. Hutson,* 1st Dist. Nos. C-060274, C-060275, and C-060276, 2007-Ohio-1178, 2007 WL 779127; *State v. Lester,* 12th Dist. No. CA-2009-07-093, 2012-Ohio-41, 2010 WL 58929; and *State v. Shuck*, 4th Dist. No. 09CA12, 2010-Ohio-2058, 2010 WL 1857347. In *Hutson,* the appellate court held that the state produced sufficient circumstantial evidence to establish Hutson had been operating his car at 2:45 a.m., within the two-hour time period. There, an independent witness testified he awoke at 2:45 a.m., looked out his window, and saw Hutson's car crashed on his front lawn. Given the gravity

of the car accident and the proximity of the crash to the witness's home, the appeals court held the trial court reasonably inferred that the sound of the accident awakened the witness.

{¶ 22} In *Lester,* the defendant challenged the trial court's factual findings that the breathalyzer test was administered within the statutory time limit. At the suppression hearing, the trooper involved testified he was dispatched to a single car accident at 9:21 p.m. and arrived at the scene 20 minutes later. The trooper testified upon arrival, he noticed "fresh marks going off the road," the defendant seated in the driver's seat of his car, and even though the vehicle was not running and it was a cold winter evening "it was warm inside the vehicle." The trooper testified while he was unable to pinpoint the exact time of the accident, it was inconceivable that defendant's vehicle was in the ditch for several hours without being reported. Id. at ¶ 9. Another trooper testified that when he arrived at the scene, the defendant "never acted like he'd been there a tremendous amount of time," and after speaking with him, got the impression the accident had just occurred. Id. at ¶ 10. The appeals court held there was competent and credible evidence that the breathalyzer test was administered within three hours of the alleged violation. The appeals court agreed with the trial court, that there was simply no evidence, circumstantial or otherwise, to indicate anything other than the

accident occurred "right before the state troopers arrived." *Lester, supra* at ¶ 12.

{¶ 23}  In *State v. Shuck,* this court also upheld the trial court's finding of fact that Shuck's accident occurred at 5:05 a.m. and he was tested within the three-hour time limit imposed by statute.  At suppression, Shuck and the prosecution presented contrasting timelines for the accident.  Shuck testified as to phone calls he made the morning of the accident, at 4:39 a.m., 4:43 a.m., and 5:08 a.m.  Shuck claimed he made the 4:39 a.m. call immediately after the accident occurred, at least 20 minutes prior to 5:00 a.m.  Shuck's BAC test was administered at 7:51 a.m.

{¶ 24}  The prosecution relied on the testimony of an independent witness.  The witness heard the accident as he was getting ready to leave for work, and testified the time was around 5:10 a.m.  The witness testified he knew this because he had to be at work at 6:00 a.m. and for the past six years, he had left for work at approximately 5:10 a.m.  The witness further testified on the accident date, he was getting ready to open his door and leave for work when the accident occurred.  After briefly speaking to Shuck, the witness drove on to work, arriving at the usual time.

{¶ 25}  These determinations are fact-driven and each situation is unique, as Appellant points out.  In the case sub judice, we agree with the

trial court's conclusion that Appellant's last operation of this motor vehicle was within the three-hour time period. The sheriff's department recorded Everson's call at 5:56 a.m. Everson testified she was probably awakened at approximately 5:30 a.m. Deputy McConnell testified the accident occurred sometime before 5:56 a.m., when he was dispatched to the scene. McConnell encountered Appellant in Everson's yard. Deputy McConnell testified Appellant told him about the crash and what type of car they were looking for. Approximately five minutes later, when Appellant and McConnell found the car, McConnell testified the hood of the car was warm, despite its being a frosty morning.

{¶ 26} Appellant's car was found in a wooded area some distance from the Everson house. Deputy McConnell testified Appellant stated he "wasn't sure what happened," and "the next thing he knew, he was in the woods or field." The last operation of Appellant's vehicle had to have been no earlier than 5:15 a.m. to be within the three-hour rule. Even if there was some delay before Appellant straggled to the Everson yard, it is inconceivable that the hood of Appellant's car would have remained warm on a frosty morning, if the delay was not a brief one. We note Appellant supplied no witnesses to dispute the testimony of Everson and the deputy.

{¶ 27} We find there was competent credible evidence from which the trial court inferred the operation of Appellant's vehicle occurred within three hours as required. The trial court did not err in overruling the motion to suppress and making its finding that the breath test was administered within three hours.  Accordingly, we overrule the first assignment of error.

## ASSIGNMENT OF ERROR TWO

II.THE VERDICT OF GUILTY WAS BASED ON INSUFFICIENT EVIDENCE AND WAS OTHERWISE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## STANDARD OF REVIEW

{¶ 28} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would  convince the average mind of the defendant's guilt beyond a reasonable doubt.  *State v. Dennison,* 4th Dist. No. 06CA48, 2007-Ohio-4623, 2007 WL 2570736, ¶ 9.  See, e.g. *State v. Jenks,* 61 Ohio St. 3d 259, 574 N.E. 2d 492 (1991), paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id*., citing *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979).

{¶ 29}  A sufficiency of the evidence challenge tests whether the state's case is legally adequate to satisfy the requirement that it contain prima facie evidence of all elements of the charged offense.  See *State v. Martin*, 20 Ohio App. 3d 172, 175 485 N.E. 2d 717 (1983), and *Carter v. Estell* (C.A. 5, 1982), 691 F. 2d 777, 778. It is a test of legal adequacy, rather than a test of rational persuasiveness.  *Dennison, supra* at ¶ 10.

{¶ 30}  The sufficiency of the evidence test "raises a question of law and does not allow us to weigh the evidence," *Hollis,* at ¶ 21; *State v. Smith,* 4th Dist. No. 06CA7, 2007-Ohio-502, 2007 WL 355274, at ¶ 34, citing *State v. Martin,* 20 Ohio App. 3d 172, 175, 484 N.E. 2d 717 (1983).  Instead, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact [to fairly] resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"  *Smith,* at ¶ 34, citing *State v. Thomas,* 70 Ohio St. 2d 79, 79-80, 434 N.E. 2d 1356 (1982); *State v. De Hass,* 10 Ohio St. 2d 230, 227 N.E. 2d 212 (1967), paragraph one of the syllabus.

{¶ 31}  In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must view the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction

must be reversed. *Dennison, supra,* at ¶ 11; *State v. Thompkins, supra,* at 387, citing *State v. Martin, supra,* at 175. A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. *State v. Johnson,* 58 Ohio St. 3d 40, 41, 567 N.E. 2d 266 (1991); *State v. Eskridge,* 38 Ohio St. 3d 56, 526 N.E. 2d 304 (1988), paragraph two of the syllabus. We realize that the evidence may pass a sufficiency analysis and yet fail under a manifest weight of the evidence test. *Dennison, supra,* at ¶ 15. See *Brooker, supra* at ¶ 16, citing *Thompkins, supra.*

## LEGAL ANALYSIS

{¶ 32} Under the second assignment of error, Appellant argues that the three-hour requirement of R.C. 4511.19(D)(1)(b) was the evidentiary foundation of the State's case. Appellant submits because there was non-compliance with R.C. 4511.19(D)(1)(b), there was insufficient evidence to support his conviction for a violation of R.C. 4511.19(A)(1)(h), or, in the alternative, his conviction was against the manifest weight of the evidence. We disagree with these arguments.

{¶ 33} Appellant pled no contest to a violation of R.C.4511.19(A)(1)(h). The breath test obtained by Deputy McConnell revealed a prohibited blood alcohol concentration of .174. The

circumstances surrounding the obtaining of Appellant's breath test are also the evidentiary foundation for admission of the breath test at the heart of the State's case.  We have found the breath test was conducted within the three-hour requirement of 4511.19(D)(1)(b).

{¶ 34}  We further find Appellant's conviction was not against the manifest weight of the evidence.  We have reviewed the entire record, weighed the evidence and the reasonable inferences to be drawn from the evidence, and considered the credibility of the witnesses. In doing so, we cannot find the trier of fact clearly lost its way and created a manifest miscarriage of justice. Based on the above, we overrule Appellant's second assignment of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

Hoover, J., dissenting:

{¶ 35}  I respectfully dissent from the principal opinion. The main issue presented in this appeal is whether the State of Ohio complied with the three-hour requirement in administering the breath test to the appellant.  I would sustain appellant's first assignment of error by concluding that the State of Ohio did not meet its burden of proof in demonstrating compliance with the three-hour requirement. I would reverse the judgment of the trial court and remand the case for further proceedings, including issuance of an entry granting appellant's motion to suppress.

{¶ 36}  In this case, the appellant entered a no contest plea to a violation of R.C. 4511.19(A)(1)(h).  The appellant accepted the facts that were stated on the record as true.  The pertinent parts of the transcript of the change of plea hearing read as follows:

THE COURT:  Do you want to give a brief recitation of the facts
in support of the no contest plea?

MS. REYNOLDS:  Certainly, Your Honor.  On October 25th of 2012,
the Defendant crashed on the property of Theresa Everson, which is
located on Everson Road, 367 Everson Road, in Dunham Township,
Washington County, Ohio. Deputy McConnell was called to the scene
by Ms. Everson, who was alerted to the Defendant being crashed

because he came up to her property.  He had crashed down into a wooded area that borders her home.  After the sheriff's department investigated, made contact with him, he was taken in for breath testing and tested .174 on the BAC DataMaster.

MS. LANDAKER:  Yeah, I believe he was wandering around, and eventually when the officer showed up, he approached the car with his hands in the air, and that's how the initial contact happened.

THE COURT:  Yes, much more came out during-

MS. LANDAKER:  During the Motion to Suppress, yeah.

THE COURT:  -the Motion to Suppress, I believe, if I recall right, there were little dogs that alerted her with barking and everything else. She called 911, the odor of alcohol, and the hood was warm, and the real question is, whether or not the operation was within three hours of the breath test.

MS. LANDAKER:  That's correct.

THE COURT:  And that will all be explored.  The Court does find the statement is adequate to support the no contest.

***

{¶ 37}  Our standard of review of a trial court's decision on a motion to suppress presents a mixed question of law and fact.  *State v. Burnside,* 100

Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  When considering a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility.  *Id.* Accordingly, we must accept the trial court's findings of fact if they are supported by competent credible evidence.  *Id.*  Therefore, accepting those facts as true, we must "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 38}  "R.C. 4511.19(D)(1)(b) provides that the court may admit evidence as shown by a chemical analysis of a bodily substance 'withdrawn within three hours of the time of the alleged violation.'  The rationale for this requirement is to have a sample closely related in time as (circumstantial) evidence of the concentration at the time of operation.  If the sample is taken within that time, no expert testimony is required to relate back to the time of operation.  A later test may still be admissible with expert testimony to calculate, by retrograde extrapolation, the concentration at the time of operation.  *Newark v. Lucas,* 40 Ohio St.3d 100, 532 N.E.2d 130 (1988); *State v. Hassler,* 115 Ohio St.3d 322, 875 N.E.2d 46 (2007).  Thus, the reason for the rule is the relevance and reliability of the chemical test result."

*State v. Crace,* 168 Ohio Misc.2d 13, 2012-Ohio-2090, 968 N.E.2d 76, ¶ 10 (M.C.).

**{¶ 39}** "'The state has the burden to establish that the test was done in accordance with established law to the extent the defendant takes issue with its legality.'" *State v. Mausling,* 11th Dist. Geauga No. 2005-G-2626, 2006-Ohio-1270, ¶ 33, fn.3, *State v. Golec*, 11th Dist. No.1977, 1989 Ohio App. LEXIS 873, * 4-5, (Mar. 17, 1989), in turn citing *State v. Gasser*, 5 Ohio App.3d 217, 451 N.E.2d 249 (3rd Dist. 1980).

**{¶ 40}** Here, Ruppert challenged the State's compliance with the three-hour requirement in his motion to suppress.

**{¶ 41}** It is difficult to find that competent credible evidence existed in this case demonstrating the State's compliance with the three-hour requirement. On cross-examination, the arresting officer, Deputy Sheriff Jeremiah Keith McConnell, was questioned about the time of the occurrence of the accident. Deputy McConnell testified that he was dispatched at 5:56 a.m. to Theresa Ann Everson's home because of a suspicious male around the house. The transcript of the hearing on the motion to suppress reads as follows:

Q. [Appellant's attorney] Okay. And again, you have no idea what time the accident actually occurred, correct?

A.  [Deputy McConnell] Correct.

**{¶ 42}**  In addition, Ms. Everson, testified that she was "just kind of guessing" when she was asked if she ever looked at a clock or if she was just guessing about the times.  Ms. Everson testified that she was not real sure what time she saw the appellant standing out by her building.  Ms. Everson did not testify regarding the time of the last operation of appellant's vehicle.

**{¶ 43}**  The State of Ohio's last witness, Deputy Kevin Carr, was the officer who administered the breath test.  Deputy Carr testified that he administered the breath test at 8:15 a.m.  Deputy Carr provided no testimony regarding the time of the last operation of appellant's vehicle.  Since the breath test was administered at 8:15 a.m., the last operation of the vehicle by appellant had to have been 5:15 a.m. or after.

**{¶ 44}**  The principal opinion cites to *State v. Fowler,* 2nd Dist. Clark No. 99-CA-57, 2000 WL 353150 (Apr. 7, 2000).  In *Fowler,* the Second District Court of Appeals affirmed the judgment of conviction.  However, this case is distinguishable from *Fowler* in that four other persons were involved in the *Fowler* crash.  Those persons stated that the crash occurred at 4:35 p.m.  The *Fowler* accident occurred on a busy road and any accident would have been reported within a short period of time.  In addition, Ms.

Fowler was found in the vehicle blocking traffic at the scene of the crash by the arresting officer.

{¶ 45} The principal opinion also relies upon this Court's decision in *State v. Shaffer,* 4th Dist. Pickaway No. 01CA21, 2002-Ohio-4167. In *Shaffer,* this Court affirmed the decision of the trial court denying Ms. Shaffer's motion to suppress. However, *Shaffer* is also distinguishable from this case. In *Shaffer,* Ms. Shaffer actually called 911 herself after she had collided with a tractor trailer. Ms. Shaffer had signed a voluntary statement also. In that statement, Ms. Shaffer stated that "* * * [t]here was smoke and I feared that the car was on fire in the engine. I pulled Amanda out of the driver's side and laid her on the ground. I called 911 from my cell phone and waited for help." *Id.* at ¶ 7. The 911 call was received at 2:11 a.m. and the breath test was administered at 3:18 a.m. *Id.* at ¶ 10. This Court found that "the trial court could properly infer from appellant's own statement that she notified the authorities very shortly after the accident occurred." *Id.* at ¶ 23.

{¶ 46} In this case, the appellant was involved in a single car crash in a wooded area with no passenger and no witnesses to the accident. Ms. Everson called 911 to report the suspicious male walking around her property, not to report a car accident. It is unknown how long appellant was

walking around before the Everson's dogs began barking. Upon the arrival of Deputy McConnell, the disoriented and confused appellant was not in his vehicle; rather, he was staggering around Ms. Everson's property. These facts are very different from those in the *Fowler* and *Shaffer* cases; and it cannot be said that the evidence affirmatively establishes that the Breathalyzer test was administered within the three-hour time period.

{¶ 47} Because I would sustain the appellant's first assignment of error, I would find appellant's second assignment of error moot. I would reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

# JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J.:    Concurs in Judgment Only as to Assignment of Error I; Concurs in Judgment and Opinion as to Assignment of Error II.

Hoover, J:    Dissents with Dissenting Opinion.

For the Court,

BY:    _____
            Matthew W. McFarland
            Presiding Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**