DECISION AND JUDGMENT ENTRY
{¶ 1} Michael Edgington appeals the judgment of the Ross County Court of Common Pleas convicting him of rape, a felony of the first degree, and sentencing him to seven years in prison. Edgington contends that the record contains insufficient evidence to show that he compelled R.E. to submit to sexual conduct by force or threat of force. Because we find, viewing R.E.'s testimony in a light most favorable to the prosecution, that it is sufficient to convince the average mind beyond a reasonable doubt that Edgington compelled her to submit to sexual conduct by force, we disagree. Next, Edgington contends that prosecutorial misconduct during closing arguments deprived him of his constitutional right to a fair trial. Because we find that the challenged statements, when viewed in the context of the prosecutor's closing argument as a whole, are not improper, we disagree. Finally, Edgington contends that he was deprived of his constitutional right to effective assistance of counsel when his trial counsel failed to timely object to portions of the prosecutor's closing argument. Because, in our resolution of Edgington's second assignment of error, we found that neither of the challenged statements constituted prosecutorial misconduct, we find that Edgington's trial counsel was not ineffective for failing to object to them at trial. Accordingly, we overrule each of Edgington's assignments of error and affirm the trial court's judgment.
 I. {¶ 2} On February 18, 2005, the Ross County Grand Jury indicted Edgington for rape, in violation of R.C. 2907.02. Edgington entered a plea of not guilty, and the matter proceeded to a jury trial. The state presented the testimony of the victim, R.E., and Jason Lemaster.
 {¶ 3} R.E.'s testimony revealed that she met Edgington at a bowling alley in August of 2003, and over the next few months the two got to know each other. When they met, R.E. informed Edgington that she was fifteen years old, and Edgington informed her that he was eighteen years old.
 {¶ 4} R.E. testified that, one evening in November of 2003, she met Edgington in the parking lot of her apartment complex. R.E. spoke to Edgington as he, Jason Lemaster, and Justin Lewis sat in Edgington's car. R.E. got into the backseat of Edgington's car and he drove to his residence. R.E. went into the residence with Edgington and Lemaster and sat down on a couch in the living room. Shortly thereafter, Edgington said that he had something to show R.E. and took her to his bedroom down the hall. Once in the bedroom, R.E. sat down on the bed. Edgington came toward her, causing her to fall backward so that she was lying on the bed. Edgington then began removing her pants and underwear. Despite R.E.'s repeated requests that he "stop," and her efforts to pull her pants back up, Edgington persisted in removing R.E.'s pants, laid on top of her and engaged in vaginal intercourse with her.
 {¶ 5} Jason Lemaster testified that he recalled an evening when R.E. was at the residence he shared with Edgington, although he did not recall whether he accompanied Edgington when he went to get R.E. Lemaster remembered sitting and talking with his cousin, Justin Lewis, Edgington and R.E., and that, at some point, Edgington and R.E. walked down the hall to the bedroom. Lemaster testified that when they returned to the living room, approximately twenty minutes to one-half hour later, Edgington appeared "happy" and "normal," but that R.E. seemed different. He indicated that while she was very talkative before going to the bedroom, upon returning to the living room, she was "pretty quiet" and "didn't talk." Lemaster stated that about ten minutes after Edgington and R.E. came out of the bedroom, Edgington left to take R.E. home.
 {¶ 6} After deliberating, the jury returned a guilty verdict. On August 17, 2005, the trial court sentenced Edgington to a mandatory prison term of seven years, to be served concurrently with the sentence Edgington was already serving for a separate offense.
 {¶ 7} Edgington appeals, raising the following assignments of error: "I. APPELLANT'S CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE. II. APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL DUE TO THE MISCONDUCT OF THE PROSECUTING ATTORNEY. III. APPELLANT WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL."
 II. {¶ 8} In his first assignment of error, Edgington contends that the record contains insufficient evidence to prove that he was guilty of rape, as defined in R.C. 2907.02(A)(2). Specifically, Edgington asserts that the state failed to introduce any evidence that he forced R.E. to engage in sexual conduct.
 {¶ 9} When determining whether the record contains sufficient evidence to support a criminal conviction, our function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. See, also, Jackson v. Virginia (1979),443 U.S. 307, 319. This test raises a question of law and does not allow this court to weigh the evidence. State v. Martin (1983),20 Ohio App.3d 172, 175. Rather, this test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."Jackson, 443 U.S. at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 79-80;State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 10} R.C. 2907.02(A)(2) provides: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2901.01(A)(1) defines "force" as: "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."
 {¶ 11} The Ohio Supreme Court has held that "[f]orce need not be overt and physically brutal * * * as long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." State v. Eskridge
(1988), 38 Ohio St.3d 56, 58-59. "A threat of force can be inferred from the circumstances surrounding sexual conduct[.]"State v. Schaim (1992), 65 Ohio St.3d 51, at paragraph one of the syllabus. Moreover, R.C. 2907.02(C) provides that: "A victim need not prove physical resistance to the offender in prosecutions under this section."
 {¶ 12} Here, Edgington contends that the state failed to prove beyond a reasonable doubt that he used force or a threat of force to compel R.E. to engage in sexual conduct. Edgington argues that the record contains no evidence that he used force or threatened to use force during the incident. He argues that R.E. testified that he did not threaten or force her to engage in the sexual conduct and that she acknowledged he had never threatened her or displayed any physical aggression toward her in the past from which she could infer a current threat. Therefore, he asserts that under the Ohio Supreme Court's holding in Schaim,
there is insufficient evidence to convince an average mind beyond a reasonable doubt that he forcibly raped R.E.
 {¶ 13} In Schaim, the defendant was charged with two counts of forcibly raping his adult daughter. Schaim at 52. At trial, the victim testified "He didn't force me, but he — it had started from such a long time back, that the way he had brought me up and the way he had started with me, I felt like if I didn't do it that I would be punished, `cause every time that he asked me to do something and I wouldn't, it would be held against me. I wouldn't be able to go out. I would be limited. So I felt like if I didn't do it, I would be punished for it." Id. Although the victim admitted that the defendant did not use force or threaten her during the two incidents for which he was charged, the state urged the court to find that the defendant's pattern of sexually abusing the victim was sufficient to uphold his conviction for forcible rape.
 {¶ 14} In Schaim, the prosecution did not introduce evidence that the defendant had used physical force or threatened the victim with physical force during past incidents of sexual abuse, such that she would infer the threat of physical force based on past occurrences. Id. at 55. Moreover, the victim specifically testified that he did not use force or a threat of force during the incidents at issue. Id. Therefore, the court held that: "A threat of force can be inferred from the circumstances surrounding sexual conduct, but a pattern of incest will not substitute for the element of force where the state introduces no evidence that an adult victim believed that the defendant might use physical force against her." Id.
 {¶ 15} We find the facts of this case to be distinguishable from those of Schaim because here, the state introduced some evidence that Edgington used force to compel R.E. to engage in sexual conduct. Unlike the victim in Schaim, R.E. never testified that Edgington did not use force to compel her to engage in sexual conduct. Instead, R.E. testified that while she was sitting on the bed in Edgington's bedroom, he came toward her, and she fell backward so that she was lying on the bed. She indicated that Edgington was on his hands and knees over the top of her and started to remove her pants and underwear. R.E. stated that while Edgington was removing her pants, she kept telling him to "stop." She attempted to pull her pants back up, but Edgington persisted to pull them down. R.E. indicated that once Edgington had her pants and underwear down around her ankles, he removed his own shorts, laid on top of her, and inserted his penis into her vagina. When asked if she was able to move while Edgington was on top of her, R.E. stated: "I don't really know if I could move cause I was too scared — I was too scared." Although R.E. admitted, during cross-examination, that Edgington did not verbally threaten her or strike her during the encounter, she indicated that, after he took off her pants and underwear, "I knew what he was doing, and it scared me."
 {¶ 16} Viewing this testimony in a light most favorable to the prosecution, we find that it is sufficient to convince the average mind beyond a reasonable doubt that Edgington compelled R.E. to submit to sexual conduct by force. Specifically, Edgington placed himself in a position where he was over the top of R.E. on his hands and knees, while removing her pants. Although she protested and kept asking him to stop, even attempting to pull her pants back up, Edgington overcame her efforts and succeeded in pulling her pants down around her ankles. He then further constrained R.E. by laying on top of her and proceeding to engage in sexual intercourse with her. Furthermore, we note that the Eleventh Appellate district has found sufficient evidence to support a conviction based upon similar facts. See, State v. Shannon, Lake App. Nos. 2002-L-007 and 2002-L-008, 2004-Ohio-1669, at ¶ 95. Accordingly, we overrule Edgington's first assignment of error.
 III. {¶ 17} In his second assignment of error, Edgington contends that the prosecutor made two improper statements during his closing argument that effectively denied Edgington his right to a fair trial. Specifically, Edgington contends that the prosecutor improperly expressed his own belief in Edgington's guilt and improperly encouraged the jurors to abandon their position of impartiality by placing themselves in the position of rape victims. Edgington concedes that he did not challenge the prosecutor's statements during trial, and therefore, that he has waived all but plain error with regard to their admission. See, Crim.R. 52; State v. Smith, 97 Ohio St.3d 367, 2002-Ohio-6659
at ¶ 45, citing State v. Slagle (1992), 65 Ohio St.3d 597, 604.
 {¶ 18} The test for prosecutorial misconduct is whether the conduct was improper and, if so, whether the rights of the accused were materially prejudiced. Id., citing State v. Smith
(1984), 14 Ohio St.3d 13, 14. The "conduct of a prosecuting attorney during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial." State v. Gest
(1995), 108 Ohio App.3d 248, 257; State v. Keenan (1993),66 Ohio St.3d 402; State v. Apanovitch (1987), 33 Ohio St.3d 19,24. Prosecutorial misconduct constitutes reversible error only in rare instances. Keenan at 406, quoting State v. Depew (1988),38 Ohio St.3d 275, 288. The "touchstone of analysis * * * is the fairness of the trial, not the culpability of the prosecutor. * * * The Constitution does not guarantee an `error free, perfect trial.'" Gest at 257.
 {¶ 19} The Ohio Supreme Court has recognized that the prosecution is afforded wide latitude in closing arguments.Smith, 97 Ohio St.3d 367, at ¶ 51. The propriety of these arguments falls within the sound discretion of the trial court.State v. Benge (1996), 75 Ohio St.3d 136, 141, citing State v.Maurer (1984), 15 Ohio St.3d 239, 269. Thus, in weighing its effect on an appellant's due process rights, the effect of the statements on the jury must be determined in the context of the entire closing argument. State v. Byrd (1987), 32 Ohio St.3d 79,82. (Citations omitted.) "Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." State v. Hill (1996), 75 Ohio St.3d 195, 204, citingDonnelly v. DeChristoforo (1974), 416 U.S. 637, 647.
 {¶ 20} Here, Edgington contends that the prosecutor made two improper statements during his closing argument. First, Edgington contends that the prosecutor improperly expressed his own belief in Edgington's guilt when he stated: "Consider that evidence and take into account what you heard from [R.E.] and I believe that you will in fact find the Defendant guilty."
 {¶ 21} However, we find that "[a] prosecutor may state his opinion if it is based on the evidence presented at trial."State v. Watson (1991), 61 Ohio St.3d 1, 10, overruled on other grounds by State v. McGuire (1997), 80 Ohio St.3d 390, 403. Here, the prosecutor's statement, made after he explicitly stated the elements of the crime, and summarized both the evidence and the inferences that could reasonably be drawn from that evidence, constitutes nothing more than his contention that the evidence adduced at trial supported a guilty verdict. Therefore, considering the prosecutor's closing argument as a whole, we find nothing improper about this statement.
 {¶ 22} Edgington also contends that the prosecutor improperly encouraged the jury to abandon their position of impartiality by placing themselves in the position of rape victims when he stated: "Proof that the state is required to put forward is proof that an ordinary person, you or I, would be willing to rely and act upon in the most important of our own affairs and I ask you to ask yourself what are the most important of our affairs. Is it not the safety of those in our community and their freedom from sexual assault of this nature. Think about that as you deliberate and I ask you to find him guilty." Edgington asserts that this portion of the prosecutor's closing appealed to the jury's prejudices by linking the safety of the community as a whole to Edgington's guilt.
 {¶ 23} The state notes that, in his closing argument, defense counsel reminded the jury that the state bears the burden of proof beyond a reasonable doubt, and further stated that such proof "is a very high degree of proof." Defense counsel told the jurors that the court would tell them that "proof beyond a reasonable doubt * * * is proof of such quality and such character that an ordinary person would be willing to act and rely upon such proof in deciding the most important of his or her own affairs." The state contends that, based upon defense counsel's statements, the prosecutor, in his final closing argument, reiterated the standard for proof beyond a reasonable doubt and then went on to state: "I ask you today to ask yourself what are the most important of our affairs. Is it not the safety of those in our community and their freedom from sexual assault of this nature[?]"
 {¶ 24} Viewing the prosecutor's closing arguments as a whole, we cannot find that these statements improperly encouraged the jury to abandon their position of impartiality by placing themselves in the position of rape victims or by linking the safety of the community as a whole to Edgington's guilt. In both of his closing arguments, the prosecutor asked the jury to consider the evidence adduced at trial, and apply it to the elements of the crime charged. The prosecutor specifically acknowledged the seriousness of the charge, the state's substantial burden of proof, and the importance of courts and trials to decide criminal cases based upon the evidence presented at trial.
 {¶ 25} The Ohio Supreme Court has recognized that "[a] request that the jury maintain community standards is not equivalent to the exhortation that the jury succumb to public demand." State v. Lorraine (1993), 66 Ohio St.3d 414, 419, quoting State v. Williams (1986), 23 Ohio St.3d 16, 20. Similarly, we find that the prosecutor's statements reminding the jury of the importance and seriousness of its role in protecting the community from sexual assault, while urging the jury to decide the case based upon the evidence before it, are not improper. Therefore, we find no error, let alone plain error.
 {¶ 26} Moreover, we note there is a presumption that the jury follows the instructions given to it by the trial court. Pang v.Minch (1990), 53 Ohio St.3d 186, 195. Here, the trial court instructed the jury that the closing arguments of counsel are designed to assist the jury, and that "[t]hey are not evidence." The court also explicitly instructed the jury that: "You must not be influenced by any consideration of sympathy or prejudice. It is your duty to carefully weight the evidence, to decide all of the disputed questions of fact, to apply the instructions of the court to your findings, and to render your verdict accordingly. In fulfilling your duty, your efforts must be to arrive at a just verdict. Consider all of the evidence and make your finding with intelligence and impartiality, and without bias, sympathy, or prejudice, so that the State of Ohio and the defendant will feel that their case was fairly and impartially tried." Therefore, even if we were to assume, arguendo, that the statements challenged by Edgington were improper, we cannot find that they suffered any prejudice as a result of their admission.
 {¶ 27} Because we find that the prosecutor's statements during his closing argument were not improper, and, therefore, did not constitute error, we conclude that Edgington cannot prevail upon his argument that their presence constitutes plain error. Accordingly, we overrule Edgington's second assignment of error.
 IV. {¶ 28} In his third assignment of error, Edgington contends that his trial counsel's failure to timely object to the prosecutor's closing argument deprived him of his constitutional right to effective assistance of counsel. However, in our resolution of Edgington's second assignment of error, we found that neither of the challenged statements constituted prosecutorial misconduct, and, therefore concluded Edgington suffered no prejudice as a result of their admission. Therefore, Edgington's trial counsel was not ineffective for failing to object to the statements at trial. See, e.g., State v. Jackson,107 Ohio St.3d 53, 2005-Ohio-5981, at ¶ 145. Accordingly, we overrule Edgington's third assignment of error.
 V. {¶ 29} In conclusion, we overrule each of Edgington's assignments of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, P.J.: Concurs in Judgment and Opinion as to Assignments of Error I and III; Concurs in Judgment Only as to Assignment of Error II.
McFarland, J.: Concurs in Judgment Only.