[Cite as *State v. Andrews*, 2024-Ohio-5023.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 22CA28 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| | : | |
| JAMES R. ANDREWS, | : | |
| | : | |
| Defendant-Appellant. | : | **RELEASED: 10/08/2024** |

<u>APPEARANCES:</u>

L. Scott Petroff, Athens, Ohio, for appellant.

Nicole T. Coil, Washington County Prosecuting Attorney, Marietta, Ohio, for appellee.

Wilkin, J.

{¶1} This is an appeal from a Washington County Court of Common Pleas judgment entry that convicted appellant, James R. Andrews ("Andrews"), of bribery in violation of R.C. 2921.02(C), a third-degree felony. On appeal Andrews maintains that his conviction is against the manifest weight of the evidence, is not supported by sufficient evidence, and that he suffered prejudice due to several improper comments the prosecutor made during his closing argument. After reviewing the parties' arguments, the record, and the applicable law, we find Andrews' conviction is not against the manifest weight of the evidence, is supported by sufficient evidence, and, with one possible exception, the prosecutor's comments were not improper, and Andrews suffered no

prejudice from any of the comments.  Therefore, we overrule Andrews' three assignments of error and affirm the trial court's judgment of conviction.

BACKGROUND

**{¶2}** On November 3, 2021, a grand jury charged Andrews with bribery for corrupting or improperly influencing a witness by offering the witness a valuable thing or benefit in violation of R.C. 2921.02(C) and (E), a third-degree felony. The case went to trial.  The State presented three witnesses: Sarah Morris, Ariel Dair, and Derek Tewanger.

**{¶3}** Andrews and Sarah Morris ("Morris") had two children and cohabitated.  On September 5, 2021, Andrews was arrested for committing domestic violence against Morris.  Morris testified that the next day she received a call from Andrews who was in jail.  Calls from the jail are recorded, as was the call between Morris and Andrews.

**{¶4}** The State then played the audio from that phone call for the jury.

| | |
|---|---|
| Mr. Andrews: | I can't believe this. |
| Ms. Morris: | Hello. |
| Mr. Andrews: | They put an F -- they put an F4 on me. |
| Ms. Morris: | I don't want to talk to you.  Why are you calling me from Dillon's account. (Dillion is Morris' brother.) |
| Mr. Andrews: | It's not on -- it's -- did you put a protection order on me?  Hello? |
| Ms. Morris: | Yeah.  I was thinking about it, yes. |
| Mr. Andrews: | Don't put no protection order on me. |

Ms. Morris:        You know, my tongue is swollen, because when you hit me, I bit my tongue and it's swollen. I can't eat. I can't swallow. Like, it hurts to talk. You belong where you're at.

Mr. Andrews:       No, I don't Sarah. I don't need to spend 2- or $3,000 trying to bail out on an F4. I really wish you'd go, you'd drop the charges. If you want me to go out to my dad's house or whatever, I'll go out to my dad's house. But I need to buy a car, and I'm going to be spending all the money I got in the bank on getting out of here.

Ms. Morris:        Now what is your problem?

Mr. Andrews:       If you -- if you ever did love me, do that much for me.

Ms. Morris:        No. No. Look, don't be doing that shit. You're just -- you're creating this. You're just -- you're creating all this crap that you've done, and you hit me, and you know what else you did too.

Mr. Andrews:       Sarah.

Ms. Morris:        Abusive, vulgar -- vulgar language. You --.

Mr. Andrews:       If you don't -- if you don't want me around anymore, I won't be around anymore.

Ms. Morris:        Oh, bullshit. That -- no, that's bull. I'm not believing that for a minute.

Mr. Andrews:       I'll get the car. I'll go up to Dad's and I'll just go to work. Get my license, get a car, go to work.

Ms. Morris:        Bullshit. No, huh-unh.

Mr. Andrews:       Do you want me stuck -- you want me stuck in here, or do you want me being able to provide money for my family?

Ms. Morris:        I can provide money for my family. You understand? I'm a grown adult.

Mr. Andrews: Yeah, I know you can, Sarah, but children are expensive, and I do love -- I do love --.

Ms. Morris: Okay, love is free, buddy.

Mr. Andrews: -- those children.

Ms. Morris: Love is free to give. Okay. Living here in this apartment --.

Mr. Andrews: Well, I do love you guys, and Sarah --.

Ms. Morris: Bullshit. Sorry, but I have never, ever hit anybody in my entire life. I've never hit anyone in my life. Never hit anybody with a fist. Not my family. Nobody I knew, close friendly, you, no.

Mr. Andrews: If you want me to go up to my dad's –.

Ms. Morris: I have never hit anybody.

Mr. Andrews: -- house and not be around, I'll go out to my dad's house and I won't be around you. Would you please drop these charges on me? They're going to hit me with an F4 out of it. It's going to take thousands of dollars to bail out of here, otherwise.

I'll give you the freakin' car or something, a cheap one, and buy me another one or something. Just don't make me spend 2- or $3,000 to bail out of here.

Ms. Morris: You haven't -- J.R., you haven't even went to court yet. How you know you're going to get an F4? Huh?

Mr. Andrews: Because I've got the pa – I already got the paperwork on it, and it says F4. And it probably will be like, maybe even three grand to bail out of here. Come on.

Ms. Morris: Well, it's your fault. It's your fault. You know, don't fucking call me and blame me. Because you're --.

Mr. Andrews:      I'm not blaming you.

Ms. Morris:       — because you're freaking out --.

Mr. Andrews:      — I'm not blaming you.  I'm just --.

Ms. Morris:       — and you want beer and you want cigarettes.
No                No.

Mr. Andrews:      I'm not freaking out.  I'm not --.

Ms. Morris:       You just sit in there and do what you – and do
it – and face the consequences.

Mr. Andrews:      Sarah.

Ms. Morris:       You could have hurt her.  I'm not worried about
me.  You could have hurt her, J.R.

Mr. Andrews:      What do you mean?

Ms. Morris:       What do you – what do you mean, what do I
mean?  You only had a six-pack yesterday.
Quit acting like you were – you were so out of
it, you blacked out.  Okay?  You remember
everything.  Don't act like it.  I'm not dropping
anything.  You understand?

Mr. Andrews:      You mean when you – or (unintelligible) like –
(overtalking).

Ms. Morris:       And you – and you shouldn't even be calling
me right now.  Do you understand that?

Mr. Andrews:      Sarah, will you please, please drop these
charges, so I don't have to –.

Ms. Morris:       And you – You shouldn't even be calling me
right now.  Do you understand that?

Ms. Morris:       I thought – I thought Dillon was calling me,
because Dillon's the only person who calls me
from jail.

| | |
|---|---|
| Mr. Andrews: | I'll buy you that damn car, Sarah, if you just drop these damn charges on me, so I can get out of here, and I'll stay at my dad's house. Please. |
| Ms. Morris: | No, you don't need the charges dropped. |
| Mr. Andrews: | Yes, I do. |
| Ms. Morris: | I don't even know how to do that, even if –. |
| Mr. Andrews: | All you got to do is go in there tomorrow and have the charges dropped. |
| Ms. Morris: | No. I don't – I don't believe you. You are a liar. You are manipulative, and I have – and I do have a sort of restraining order against you. Well, it was supposed to be in effect tomorrow, because I was coming in to make sure. |
| Mr. Andrews: | Oh, please go in tomorrow and have this stuff dropped, Sarah. I'll buy you the damn car. You can have the fucking kids. You can have it all, I'll go live at my dad's house. Please. |
| Ms. Morris: | No. |

{¶5} Later during the call the following exchange occurred:

| | |
|---|---|
| Ms. Morris: | You know what? You criminals think that you guys can just get away with everything. Why did you call me? |
| Mr. Andrews: | Because I don't want to have to spend three grand to get out of here. I was supposed to get a car today --. |

{¶6} Finally, near the end of the phone call, after Andrews accused Morris of having wrecked their car, the following conversation occurred.

| | |
|---|---|
| Mr. Andrews: | On top of all that, I mean, you don't owe me a little bit for any – anything I've done? |
| Ms. Morris: | You know what? I – you know, I let you have the kids' money from the tax money. That's |

what – that's what I let you have  That's what,
five grand.  Isn't that enough?  I let you have it.
Give it to you.

{¶7} After the audio of the phone call concluded, the State continued to question Morris.  Morris claimed that she and Andrews had been talking about getting a car for some time so he could get back to work.  And, despite her insistence that she would not drop the charges, Morris testified that she spoke to the victim's advocate representative the next day and requested that the domestic violence charges against Andrews be dismissed, but found out that she did not have the authority to do so.

{¶8} Morris testified that law enforcement officials spoke to her about the phone call with Andrews.  Morris filled out a witness statement regarding the phone call.  Morris read part of her witness statement, in which she stated that Andrews "called me and wanted to get out, and he said that if I dropped the charges, he would give me money or buy me a car."  The State then asked Morris if the charges had been dropped, she responded affirmatively.

{¶9} On cross-examination, Morris confirmed that Andrews was trying to save to buy a car.  Morris testified that at that time she did not have a driver's license and did not drive because an auto accident that she suffered traumatized her.  She admitted that giving her a car would have no benefit to her.  Morris also stated that Andrews discussed purchasing a car even before he was arrested on the domestic violence charges.  She indicated that she never received a subpoena to testify in Andrews' domestic violence case.  Additionally, she discovered that she did not have any authority to drop the domestic violence

charges against Andrews.  Lastly, Morris testified that Andrews picked her up to bring her to the trial because her other ride did not show.

{¶10} The State's next witness was Ariel Dair, who is an advocate for victims of crime.  Her role is to keep crime victims up-to-date regarding their cases by calling, texting or e-mailing them.  Dair was Morris' advocate in the domestic violence case against Andrews.  Dair testified that she had problems with Morris showing up at the court.  Dair stated that Morris did not show up for the grand jury.  Dair attempted to set up a meeting with Morris to determine if she was going to show, but the meeting did not get scheduled.  Dair maintained that ultimately, if a witness in a domestic violence case does not show, typically the defendant pleads guilty to a lesser charge or the case will be dismissed.  Dair was unsuccessful in subpoenaing Morris to testify in the domestic violence case against Andrews.

{¶11} On cross-examination, Dair testified that a victim of domestic violence cannot have the charges dropped at their request.  Dismissing criminal charges is not the victim's decision, it is the State's.

{¶12} The State then called Derek Tewanger, a detective for the Marietta Police Department, to testify.  Officer Tewanger stated that he was assigned to investigate a possible bribery charge that arose from a call between Morris and Andrews, who was in jail at the time.  Tewanger interviewed Andrews, which was recorded.  The State played that recording for the jury.

{¶13} After Tewanger read Andrews his *Miranda* rights and Andrews acknowledged that he understood them, Tewanger proceeded to question

Andrews.  Tewanger told Andrews that he wanted to discuss the phone call he had with Morris.  Andrews told Tewanger that he did not try to bribe Morris by offering her a car if she dropped the charges against him.

{¶14} Tewanger testified that after he spoke to Andrews, he interviewed Morris, who filled out a witness statement.  Morris told Tewanger that she answered the call from Andrews because she thought it was her brother, but it turned out to be Andrews.  Tewanger testified that after speaking to both Andrews and Morris, some things stood out including in part that Andrews "wanted the charges dropped, in return for giving her -- at one point, he says I'll give you a car, and then he says something later about possibly maybe even buying a new car."

{¶15} On cross-examination, Tewanger admitted that it was not a complaint from Morris that triggered Tewanger's interview of Andrews but a law enforcement official who had overheard the conversation.  Tewanger testified that Morris was surprised that Andrews was being investigated for bribery.  Tewanger testified that he did not consult with the prosecutor's office before filing the bribery charge.  Tewanger stated that he believed that the domestic violence case against Andrews was dismissed.  Tewanger did not believe that a protection order was issued in the domestic violence case.  At the conclusion of Tewanger's testimony the State rested.

{¶16} Andrews moved for acquittal of the bribery charge pursuant to Crim.R. 29[1] because there was insufficient evidence to send the case to the jury.

---

[1] Crim.R. 29 (A) states:

R.C. 2921.02(C) essentially prohibits two actions: (1) corrupting a witness by offering the witness something of value, or (2) improperly influencing a witness by offering the witness something of value.  The court stated:

> We're going to take out the corrupt part, because I mean, there's actually no means to destroy the honesty or integrity of another.  No one's been asked to lie.  So that's – so the question is, it's the improper – improperly influence a witness with respect to her testimony in an official proceeding, I think, is the only thing there's been any evidence presented towards.

Thus, the court granted Andrews' motion in part, and denied it in part.  The court permitted the question of whether Andrews improperly influenced Morris by offering her something of value to be considered by the jury.

**{¶17}** The case then shifted to Andrews who waived his right to testify, and the defense rested.

**{¶18}** After closing arguments and the jury instructions, the jury began its deliberations.  The jury found Andrews guilty of bribery.  The court sentenced Andrews to a definite prison term of 24 months and notified him that he may be subjected to a period of post-release control.  Andrews appeals his conviction to this court.

ASSIGNMENTS OF ERROR

I.      THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF APPELLANT'S RIGHT OF DUE PROCESS AS GUARANTEED BY THE OHIO CONSTITUTION AND THE UNITED STATES CONSTITUTION.

---

Motion for Judgment of Acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

II.     THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A
        CONVICTION OF APPELLANT IN VIOLATION OF HIS DUE
        PROCESS RIGHTS AS GUARANTEED BY THE OHIO
        CONSITUTION AND THE UNITED STATES CONSTITUTION .

III.    APPELLANT SUFFERED PREJUDICE WHEN THE
        PROSECUTOR MADE MULTIPLE IMPROPER COMMENTS
        DURING CLOSING ARGUMENTS.

### I. First Assignment of Error

**{¶19}** In his first assignment of error, Andrews admits that he requested

Morris to drop the domestic violence charges.  He also admits the record

indicates that he intended to buy a car.  However, he claims that the record also

shows that purchasing the car was pre-planned and the car was for the benefit of

his family.  Andrews argues that the jury could not have inferred from the

evidence admitted that he was purchasing the car for the purpose of having

Morris dismiss the domestic violence charges against him.  In support of this

argument, Andrews cites several excerpts from his phone conversation with

Morris.  He told Morris: "But I need to buy a car, and I'm going to be spending all

the money I got in the bank on getting out of here."  He claims that Morris

"testified to the same."  He also cites the following statement:

> I don't need to spend 2- or $3,000 trying to bail out on an F4.
> I really wish you'd go, you'd drop the charges.   If you want me to
> go out to my dad's house or whatever, I'll go out to my dad's
> house.  But I need to buy a car, and I'm going to be spending all
> the money I got in the bank on getting out of here.  Let me get
> back to working.  Getting a vehicle and working.

Finally, he cites: "Because I don't want to have to spend three grand to get out of

here.  I was supposed to get a car today."  Andrews maintains that these

statements establish that the purchase of the car was pre-planned and for the

benefit of the entire family, not a bribe.  Therefore, Andrews maintains that his conviction for bribery is against the manifest weight of the evidence.

{¶20} In response, the State maintains that it offered evidence showing that Andrews influenced Morris' testimony.  During the call with Andrews, Morris was insistent that she was not going to drop the domestic violence charges against him.  Consequently, the State asserts, "it stands to reason that Andrews had to offer her something to get her to change her mind."  According to the State, this is precisely what Andrews did when he stated: "I'll give you the frickin' car or something, a cheap one, and buy me another one or something.  Just don't make me spend 2-$3,000 to bail out of here."  The State also cites Morris' witness statement, which confirmed that Andrews tried to bribe her.

{¶21} The State asserts that Ariel Dair, the crime victim's advocate, testified that subsequent to the phone call with Andrews, Morris no longer supported the domestic violence charges against him.  The State argues that from this change of mind, a jury could infer that Andrews persuaded Morris not to testify by offering her a thing of value.

{¶22} The State takes issue with Andrews' argument that the car was a "family purchase."  Morris testified that having a car would benefit her and her family and she needed a car to get to work.  Andrews knew that Morris needed a car for personal and family reasons and threatened "if she [did] not drop the charges that he [would] spend the money intended for the car, and /or child tax credit money, to pay his bail to get out of jail."

**{¶23}** Thus, the State maintains that the jury reasonably concluded that Andrews' offer of a car to Morris during the phone call was intended to bribe Morris to drop the domestic violence charges against him.  Consequently, the State argues, Andrews' conviction for bribery was not against the manifest weight of the evidence.

## A. Law

**{¶24}** In a manifest-weight-of-the-evidence analysis, "the appellate court 'sits as a thirteenth juror' and assesses whether it disagrees with the factfinder's resolution of the conflicting testimony." *State v. Griffin*, 2013-Ohio-3309, ¶ 31 (4th Dist.), quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52 (1997).  "Weight of the evidence concerns the inclination of the greater amount of credible evidence offered at trial to support one side of the issue over the other; it relates to persuasion and involves the effect of the evidence in inducing belief." *Fox v. Positron Energy Res., Inc.*, 2017-Ohio-8700, ¶ 10 (4th Dist.), citing *Paulus v. Beck Energy Corp.*, 2017-Ohio-5716, ¶ 16 (7th Dist.).

**{¶25}** " 'In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, [and] consider the credibility of witnesses[.]' " [Brackets sic.]  *State v. Ratliff*, 2024-Ohio-61, ¶ 48 (4th Dist.), quoting *State v. Evans*, 2023-Ohio-1879, ¶ 26 (4th Dist.), citing *Thompkins*, 78 Ohio St.3d at 387 (1997).  "An inference is 'a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proven.' " *State v. Windle*, 2011-Ohio-4171, ¶ 34 (11th Dist.), quoting *State v.*

*Nevius*, 147 Ohio St. 263, 274 (1947).  A reviewing court must " 'determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that reversal of the conviction is necessary.' " *Ratliff* at ¶ 48, quoting *Evans* at ¶ 26.  Ultimately, " '[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " *State v. Newcomb*, 2024-Ohio-805, ¶ 19 (4th Dist.), quoting *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

### B. Analysis

**{¶26}** Andrews was convicted of bribery pursuant to R.C. 2921.02(C), which states: "No person, *with purpose* to corrupt a witness or *improperly to influence* a witness with respect to the witness's testimony in an official proceeding, either before or after the witness is subpoenaed or sworn, *shall* promise, *offer*, or give *the witness* or another person *any valuable thing* or valuable benefit."   (Emphasis added.)

**{¶27}** During the phone call, in response to Morris asking him why he called her, Andrews responded:  "Because I don't want to have to spend three grand to get out of here. I was supposed to get a car today --."  And Morris testified that she and Andrews had been talking about getting a car for some time so he could get back to work.  Andrews maintains that this testimony prevented the jury from inferring that Andrews offered Morris a car in exchange for her dropping the charges against him.  Arguably, it could support an inference that

purchasing a car was being considered before Andrews was charged with domestic violence.

{¶28} However, Andrews' argument ignores that on three separate occasions during the phone call, he told Morris that if she dropped the charges against him he would buy *her* a car.  While Morris had no authority to dismiss the criminal charges against Andrews, she could have accepted the car and refused to testify as the victim in Andrews' domestic violence case.   In fact, Morris' victim's advocate, Dair, testified that Morris did not show up for the grand jury, and Dair was unsuccessful in subpoenaing Morris to testify in Andrews' case. Dair also testified that a victim's failure to testify in a domestic violence case typically results in the State seeking a lesser charge against the defendant, or that the case is dismissed.  We find that this testimony could support the conclusion that Andrews was offering Morris an item of value to improperly influence her not to testify as a witness in his domestic violence case, i.e., that Andrews bribed Morris.

{¶29} Therefore, when weighing the evidence and considering all the reasonable inferences therefrom, we do not find that the jury clearly lost its way in finding Andrews guilty of bribery so as to create a manifest miscarriage of justice.  Thus, we find that Andrews' conviction for bribery is not against the manifest weight of the evidence.  Accordingly, we overrule Andrews' first assignment of error.

II. Second Assignment of Error

**{¶30}** In his second assignment of error, Andrews maintains that his conviction was not supported by sufficient evidence. Andrews claims that the "State's theory was that the improper influence of testimony relates to whether Morris testifies at all – not whether she testified truthfully." He claims that influencing a witness to dismiss charges is insufficient to constitute bribery. Andrews argues that "no evidence was submitted that [he] acted with the purpose of preventing Morris from testifying." Therefore, there is insufficient evidence to sustain Andrews' conviction for bribery.

**{¶31}** Andrews also argues that R.C. 2921.02(C) "requires more than influencing a decision to prosecute – it requires improperly influencing *testimony*." (Emphasis sic.) Andrews claims that "[n]o direct evidence was produced that [he] sought to have Morris not testify. The only evidence in the record to support the State's theory was circumstantial." Andrews claims that at best the record demonstrates that he sought to influence Morris' decision to prosecute, but that is not influencing testimony.

**{¶32}** In response, the State maintains that there is sufficient evidence to support Andrews' conviction for bribery under R.C. 2921.02(C). The State claims that it has always argued that Andrews sought to influence Morris' testimony by getting her to drop the domestic violence charges against him. The State reasons that there would be no need for testimony if Morris dismissed the charges. Therefore, the State asserts that Andrews' second assignment of error should be overruled.

A. Law

**{¶33}** Andrews' second assignment of error asserts that his conviction for bribery is not supported by sufficient evidence. However, in part, his argument appears to be predicated on what conduct Andrews believes the bribery statute prohibits.

**{¶34}** The latter of the two issues requires us to interpret R.C. 2921.02(C). "[I]nterpretation of criminal statutes [ ] presents an issue of law that is reviewed de novo on appeal." *State v. Garduno*, 2013-Ohio-4300, ¶ 11 (11th Dist.), citing *State v. Consilio,* 2007-Ohio-4163, ¶ 8. "A court does not need to interpret a statute 'when statutory language is plain and unambiguous and conveys a clear and definite meaning.' " *Id.*, quoting *Campbell v. Carlisle,* 2010-Ohio-5707, ¶ 8.

**{¶35}** Next, we must address Andrews' assertion that there is insufficient evidence to support his bribery conviction. When reviewing a sufficiency of the evidence claim, an appellate court's function is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Ruppert*, 2013-Ohio-4878, ¶ 28 (4th Dist.), citing *State v. Dennison,* 2007-Ohio-4623, ¶ 9 (4th Dist.). Thus, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.,* citing *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, citing *Jackson v. Virginia,* 443 U.S. 307 (1979). The sufficiency of the evidence test examines the adequacy of the evidence, not its persuasiveness. *Dennison* at ¶ 10.

**{¶36}** "The sufficiency-of-the-evidence test 'raises a question of law and does not allow us to weigh the evidence.' " *State v. Knowlton*, 2012-Ohio-2350, ¶ 11 (4th Dist.), quoting *State v. Smith,* 2007-Ohio-502, ¶ 34 (4th Dist.). Moreover, " '[t]he court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence.' " *State v. Dillard*, 2014-Ohio-4974, ¶ 22 (4th Dist.), citing *State v. Kirkland*, 2014-Ohio-1966, ¶ 132. "Instead, the sufficiency-of-the-evidence test ' "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." ' " *Knowlton* at ¶ 11, quoting *Smith* at ¶ 33, quoting *Jackson* at 319.

### B. Analysis

### 1. R.C. 2921.02(C)

**{¶37}** Andrews argues that the offense of bribery requires evidence of improper influence of testimony. Andrew maintains that the State's bribery charge was based on its theory that improper influence over a *witness* is all that is necessary to prove bribery. He claims that merely influencing a witness to take some action like not testifying, as opposed to altering their testimony, is insufficient to prove bribery.

**{¶38}** As applicable to Andrews under R.C. 2921.02(C), "No person, with purpose * * * *improperly* to *influence* a *witness* with respect to the witness's testimony in an official proceeding * * * before * * * the witness is subpoenaed * * * , shall promise, offer, or give the witness * * * any valuable thing[.]" "Improper influence" has been defined as "bring[ing] undue pressure upon a person to try to

get something that they wouldn't normally do." The Law Dictionary, https://the

lawdictionary.org/?s=influence. However, the statute does not limit the effect that

the influence has upon the witness. In other words, a person's influence of a

witness may result in a broad spectrum of outcomes from altering the witness'

testimony to convincing the witness to not testify at all. *See State v. Hoehn*,

2004-Ohio-1419, ¶ 41 (9th Dist.) (Appellant was convicted of bribery under R.C.

2921.02(C) for "offering to give [his wife] whatever she wanted in their pending

divorce action if she would recant her accusations as to the charges of felonious

assault." The court of appeals found his conviction was not against the manifest

weight of the evidence.); *State v. White*, 2019-Ohio-243, ¶ 4, 64-69 (6th Dist.)

(Appellant was convicted of bribery conviction under R.C. 2921.02(C) for offering

the victim of his assault $1,500 to not show up in court. The court of appeals

found his conviction was not against the manifest weight of the evidence.).

{¶39} Therefore, based on de novo review of R.C. 2921.02(C), we reject

Andrews' argument that the State's bribery charge was predicated on its legally

insufficient theory because the State presented evidence that Andrews

influenced a *witness,* as opposed to evidence showing that he influenced

*testimony*. In fact, R.C. 2921.02(C) prohibits a person from "influenc[ing] a

witness[,]" including influencing him or her to not testify at all.

2. Sufficiency of the Evidence

{¶40} Typically, a finding that a conviction is supported by the manifest

weight of the evidence is "also dispositive of the issue of sufficiency." *State v.*

*Sims*, 2023-Ohio-1179, ¶ 120 (4th Dist.), citing *State v. Waller*, 2018-Ohio-2014,

¶ 30 (4th Dist.).  However, in this case, Andrews' argument that there is insufficient evidence to support his bribery conviction is based on a different argument than he relied upon in arguing that his conviction was against the manifest weight of the evidence.  He claims that his conviction is not supported by sufficient evidence because the bribery statute requires a person to influence testimony, not just a witness.  Therefore, we proceed to evaluate his sufficiency of the evidence argument despite our conclusion in resolving Andrews' first assignment of error in finding that his conviction is not against the manifest weight of the evidence.

{¶41} Our analysis recalls our conclusion supra that improperly influencing a witness with respect to their testimony includes influencing a witness to not testify at all.  On multiple occasions during the phone call, Andrews offered Morris a car if she agreed to drop the charges.  There is no legal authority affording a witness the right to dismiss criminal charges.  Only a court, or the State with leave of a court, may dismiss criminal charges.  *See State v. Busch*, 76 Ohio St.3d 613 (1996); R.C. 2941.33; and Crim.R. 48.  However, *Busch* also recognized that "a court's resources in a domestic violence case are better used by encouraging a couple to receive counseling and ultimately issuing a dismissal than by going forward with a trial and impaneling a jury in a case where the only witness refuses to testify."  *Id.* at 616.  In other words, if a witness for the State refuses to testify, especially a witness who is the victim in a domestic violence case, it almost certainly results in dismissal of the charges.  We find that by offering Morris a car if she would dismiss the charges against Andrews was in

fact influencing Morris to not testify at all.  When these facts are viewed in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of bribery were proven beyond a reasonable doubt.

{¶42} Therefore, we find that Andrews' bribery conviction under R.C. 2921.02(C) is supported by sufficient evidence.  Accordingly, we overrule Andrews' second assignment of error.

### III. Third Assignment of Error

{¶43} In his third assignment of error, Andrews alleges that he was prejudiced by the prosecutor's improper statements made during the State's closing argument.  He makes three separate arguments.

{¶44} First, Andrews claims that the prosecutor attacked his credibility and his counsel's credibility, which was improper.  In support, Andrews cites the following passage from the prosecutor's closing argument:

> Now in the ocean, there's two types of fish.  There's a lamprey that enlightens all around them, and shows everything in the ocean.  There's also a pufferfish that blows up and blows smoke everywhere, so you can't see through it.
> I want to be the one that just presents the facts and the truth. I don't want to blow smoke.  I don't want there to be any confusion. That's why I asked, would everyone just follow the elements of the case.  Right? The red, the blue, and the green, and not look into the purple.

{¶45} Andrews also cites the prosecutor's statement that "[t]he defendant took his attorney to a witness's house to prep the day before a case?  I've never heard of that.  If he's not trying to influence her there too, prepping her, I mean, that's – that's kind of a new – new thing for me."  Andrews maintains that prepping a witness is part of "trial practice[,]" but the prosecutor's comments

attack his and his counsel's credibility by suggesting that witness preparation is improper.

**{¶46}** Next, Andrews claims that the prosecutor encouraged the jury to consider evidence outside the record.  Specifically, Andrews cites it was improper when the prosecutor "suggests that the jury should do anything they want to investigate the allegations."

**{¶47}** Finally, Andrews maintains that the prosecutor made several statements that are not supported by the record. Andrews cites the following passage from the prosecutor's closing argument:

> And they say, oh, the car was already going to happen, whatever.  But the, the funny thing – actually, it's very sad.  Very sad thing. The money that he told her that he would have to use to bond out was their children's child tax credit money, the money that's supposed go to their food, to their clothes, to anything to better their children. He put that over her head that he would use that money to bond himself out of jail.  What is more influential to a mother of two?  She had an eight-month old and a three-year old.  What is more influential to change someone's testifying, to get them not to testify , to hold over that money that is to feed her children?  What mother could resist that?  What mother would not take that money and make sure she would drop the charges so that her children could eat?  That was the most despicable thing I've ever heard, to put that over a mother's head.  Of course he influenced her.  Of course he influenced her, and that's why she didn't show up, because she wanted to feed her children.

**{¶48}** The prosecutor appears to be claiming that Andrews threatened to use tax return money to pay his bail and deprive Morris of funds that were to be used to support the children.  Andrews argues that the prosecutor's statements are not supported in the record.

A. Law

1. Prosecutorial Commentary

**{¶49}** During closing arguments, the prosecution is given wide latitude to convincingly advance its strongest arguments and positions. *State v. Phillips,* 74 Ohio St.3d 72, 90 (1995). "Further, it is well settled that statements of counsel are not to be considered as evidence." *Id.*, citing *State v. Clark*, 2016-Ohio-2705, ¶ 45 (4th Dist.); *State v. Canterbury*, 2015-Ohio-1926, ¶ 23 (4th Dist.). Therefore, if a court instructs a jury that opening and closing statements are not evidence, " ' "[a] presumption always exists that the jury has followed the instructions given to it by the trial court." ' " *Id.* at ¶ 66, quoting *State v. Murphy*, 2010-Ohio-5031, ¶ 81 (4th Dist.), quoting *Pang v. Minch*, 53 Ohio St.3d 186 (1990), paragraph four of the syllabus.

**{¶50}** Nevertheless, "[P]rosecutors must be diligent in their efforts to stay within the boundaries of acceptable argument and must refrain from the desire to make outlandish remarks, misstate evidence, or confuse legal concepts." *State v. Fears*, 86 Ohio St.3d 329, 332, 1999-Ohio-111.

### 2. Standard of Review

### a. Plain Error

**{¶51}** As a threshold matter, because Andrews did not object to the prosecutor's statements during the trial, he has forfeited all but plain error review of the prosecutor's statements. *State v. Thomas*, 2024-Ohio-2281, ¶ 16 (4th Dist.), citing *State v. Conant*, 2020-Ohio-4319, ¶ 4 (4th Dist.). Notice of Crim.R. 52(B) plain error must be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Rohrbaugh,* 2010-Ohio-3286, ¶ 6. "For the plain error doctrine to apply, the party

claiming error must establish (1) that ' "an error, i.e., a deviation from a legal rule" ' occurred, (2) that the error was ' "an 'obvious' defect in the trial proceedings," ' and (3) that this obvious error affected substantial rights, i.e., the error ' "must have affected the outcome of the trial." ' " *State v. Young*, 2018-Ohio-4990, ¶ 4 (4th Dist.), quoting *State v. Rogers*, 2015-Ohio-2459, ¶ 22, quoting *State v. Barnes*, 2002-Ohio-68, ¶ 27. "Thus, for error to be plain, the error must be ' "clearly outcome-determinative." ' " *State v. Porter*, 2012-Ohio-1526, ¶ 19 (4th Dist.), quoting State *v. Perez,* 2009-Ohio-6179, ¶ 181, quoting *State v. Sanders,* 92 Ohio St.3d 245, 268 (2001). Consequently, "[i]n the prosecutorial misconduct context, plain error exists only when the record clearly shows that in the absence of the improper comments, the jury would not have convicted the defendant." *Id.,* citing *State v. Conley,* 2009-Ohio-1848, ¶ 27 (4th Dist.), citing *State v. Olvera-Guillen,* 2008-Ohio-5416, ¶ 36 (12th Dist.), and *State v. Rodgers,* 2008-Ohio-2757, ¶ 44 (11th Dist.).

### b. Reviewing Prosecutorial Misconduct

**{¶52}** When an appellant alleges prosecutorial misconduct, the reviewing court must determine " 'whether the conduct was improper and, if so, whether the rights of the accused were materially prejudiced.' " *State v. Leonard*, 2009-Ohio-6191, ¶ 36 (4th Dist.), quoting *State v. Smith,* 2002-Ohio-6659, ¶ 45. "The 'touchstone of analysis * * * is the fairness of the trial, not the culpability of the prosecutor. * * * The Constitution does not guarantee an "error free, perfect trial." ' " (Ellipses sic.) *Id.*, quoting *State v. Gest,* 108 Ohio App.3d 248, 257 (8th Dist. 1995). "[A]n appellate court must not focus on isolated comments but must

examine the prosecution's closing argument in its entirety to determine whether the prosecutor's comments prejudiced the defendant." *State v. Topping*, 2012-Ohio-5617, ¶ 84 (4th Dist.) citing, *State v. Treesh,* 90 Ohio St.3d 460, 466 (2001*).*

{¶53} An example of an improper comment would be an attorney "express[ing] his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused." *State v. Smith*, 14 Ohio St. 3d 13, 14 (1984), citing *State v. Thayer*, 124 Ohio St. 1 (1931). It is also improper for an attorney "to allude to matters which will not be supported by admissible evidence." *Id.*

{¶54} "To establish prejudice, a defendant must show that a reasonable probability exists that, but for the prosecutor's improper remarks, the result of the proceeding would have been different." *State v. Porter*, 2012-Ohio-1526, ¶ 20 (4th Dist.). "Thus, '[n]ot every intemperate remark by counsel can be a basis for reversal.' " [Bracket sic.] *Id.*, quoting *State v. Landrum,* 53 Ohio St.3d 107, 112 (1990). " 'The "conduct of a prosecuting attorney during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial." ' " *State v. Purdin,* 2013-Ohio-22, ¶ 31 (4th Dist.), quoting *State v. Givens*, 2008-Ohio-1202, ¶ 28 (4th Dist.), quoting *State v. Gest,* 108 Ohio App.3d 248, 257 (8th Dist.1995); *State v. Gant*, 1978 WL 215091 (7th Dist., Nov. 16, 1978), *2 (Borderline improper comments are not reversable error unless they deprive the defendant of a fair trial.). " 'Prosecutorial misconduct constitutes reversible error only in rare instances.' " *Id.*, quoting *State v. Edgington*, 2006-Ohio-3712, ¶ 18 (4th Dist.), citing *State v. Keenan,* 66 Ohio St.3d 402, 406 (1993). If, absent a prosecutor's

borderline improper comments, a jury would still find the defendant guilty, the comments are not reversable error. *State v. Ray*, 2010-Ohio-513, ¶ 23 (8th Dist.).

## B. Analysis

{¶55} We begin by recognizing that the trial court instructed the jury that the parties' opening and closing arguments were not evidence. The court told the jury that they are merely intended to "assist you in evaluating the evidence." The court also instructed the jury that they had to find evidence to support beyond a reasonable doubt that Andrews "with purpose to improperly influence a witness with respect to the witnesses' testimony in an official proceedings, either before or after the witness was subpoenaed or sworn, promised, offered, or gave the witness any valuable thing or valuable benefit." The jury was permitted to take a copy of the instructions into the deliberation room as a reminder. The jury is presumed to follow the court's instructions, and as we recognize infra, none of the prosecutor's statements cited by Andrews in his third assignment of error alter that presumption.

1. The Prosecutor's Statement Did Not Discredit Andrews or his Counsel

{¶56} Andrews first complains that the prosecutor's following statement was an attempt to discredit Andrews and his counsel.

> There's a lamprey that enlightens all around them, shows everything in the ocean. There's also a pufferfish that blows up and blows smoke everywhere, so you can't see through it. I want to be the one that just presents the facts and the truth. I don't want to blow smoke. I don't want there to be any type of confusion. That's why I asked, would everyone follow just the elements of the case. Right?

{¶57} We do not find that the prosecutor's analogy as an attempt to discredit Andrews or his counsel. Instead, the prosecutor stated that "[he] wanted to be the lamprey," i.e., he wants to enlighten the jury. Furthermore, the prosecutor here also urges the jury to "follow just the elements of the case," which included the judge's instructions to the jury regarding the elements of bribery, which the State must prove beyond a reasonable doubt, and that closing statements are not evidence. We must presume that the jury followed these instructions and we find that Andrews has not rebutted that presumption. Therefore, we find the prosecutor's statement was not improper.

{¶58} Andrews next cites the prosecutor's following comment: "The defendant took his attorney to a witness's house to prep the day before a case? I've never heard of that. If he's not trying to influence her there too, prepping her, I mean, that's – that's kind of a new thing for me." He claims that this statement was improper because it suggests that his counsel's "interviewing witnesses before a trial constitutes a crime."

{¶59} Although we do not find that the prosecutor's comments here "criminalize routine legal work" as Andrews suggests, they do border on being an improper attack on the defense counsel's witness preparation. Nevertheless, we find even absent these comments, the jury would have still convicted Andrews of bribery. Assertions made by the attorneys and testimony from the witnesses were somewhat less critical in this case compared to most others. This is because the evidence of the bribery came directly from the phone conversation

between Andrews and Morris, which was recorded in its entirety and heard by the jury.

{¶60} Therefore, we find that Andrews was not prejudiced by the prosecutor's comments. Andrews was not deprived of his right to a fair trial by said comments.

### 2. The Prosecutor's Statement Did Not Urge The Jury to Consider Evidence Outside the Record

{¶61} Andrews cites the prosecutor's statement: "So once you've gone back, listened to the calls again, you've done anything that you want to do to investigate this, I believe that you will find the defendant, James Andrews, guilty of bribery." Andrews maintains this statement encouraged the jury to improperly consider evidence outside the record. We disagree. The jury is about to deliberate whether Andrews is guilty or not. From a practical perspective, it is impossible for the jury to further investigate the claim. Although it could have been stated in a more articulate manner, we find that the prosecutor is merely reminding the jury that it may freely consider the evidence presented to determine Andrews' guilt or innocence. Therefore, we find that the statement was not improper.

### 3. The Prosecutor's Statement Regarding a Tax Refund Was Not Prejudicial

{¶62} Andrews claims that several statements by the prosecutor in the following passage during the State's closing argument are not supported in the record.

> And they say, oh, the car was already going to happen, whatever. But the, the funny thing – actually very sad. Very sad thing. The money that he told her that he would have to use to

bond out was their children's child tax credit money, the money that's supposed go to their food, to their clothes, to anything to better their children. He put that over her head that he would use that money to bond himself out of jail. What is more influential to a mother of two? She had an eight-month old and a three-year old. What is more influential to change someone's testifying, to get them not to testify, to hold over that money that is to feed her children? What mother could resist that? What mother would not take that money and make sure she would drop the charges so that her children could eat? That was the most despicable thing I've ever heard, to put that over a mother's head. Of course he influenced her. Of course he influenced her, and that's why she didn't show up, because she wanted to feed her children.

During the phone call after Andrews again stated that it would cost him $3,000 for bail, the following exchange occurred.

| Mr. Andrews: | "On top of all that, I mean, you don't owe me a little bit for anything – anything I've done?" |
| Ms. Morris: | "You know what, I let you have the kids money from the tax money. That's what – that's what I let you have. That's what, five grand? Isn't that enough? I let you have it. Give it to you." |

{¶63} Additionally the following testimony was elicited by the prosecutor from Morris.

| Q: | "Okay. There was talk of money, and talk about an automobile, and that money was supposed to be used to pay for the children's stuff. Is that correct? However, Morris testified that the tax return money was to be used to support the children." |
| A: | "Are you talking about the tax money?" |
| Q: | "Yeah." |
| A: | "That was, I was talking about that. Just, yeah, just in general, anything." |

{¶64} According to Morris' testimony, it appears that the tax return money would have been used for the children, among other things, so portions of the prosecutor's statement were consistent with the phone conversation and testimony. However, during the phone call, Morris claimed that she gave the tax return money to Andrews. Therefore, it is unclear how, according to the prosecutor's statement, Andrews held the tax money "over her head that he would use that money to bond himself out of jail." Consequently, the accuracy of that assertion by the prosecutor's statement appears to be in question. However, we do not find that his statement encouraged the jury to consider evidence outside the record as Andrews argues. Therefore, we find that the prosecutor's statements during his closing argument regarding the tax credit money were not improper.

### 4. The Prosecutor's Comments Did Not Prejudice Andrews

{¶65} With the exception of one possible borderline-improper comment, we find that the prosecutor's statements during his closing argument were not improper. Moreover, based on our plain error review, we find that the one borderline improper comment does not alter the outcome, i.e., even absent the improper comments, Andrews would still have been convicted of bribery because the jurors heard the actual recorded conversation during which Andrews made multiple offers to get Morris a vehicle if she would drop the charges. Accordingly, we overrule Andrews' third assignment of error.

### CONCLUSION

{¶66} Having overruled Andrews' three assignments of error, we affirm the

trial court's judgment entry of his conviction.


                                                            JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and the appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J.:  Concur in Judgment and Opinion.

For the Court,

BY: _____
Kristy S. Wilkin, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.